The relief described hereinbelow is SO ORDERED.

Signed May 20, 2011.



_____
ROBERT D. BERGER
United States Bankruptcy Judge
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

**In re:**

| | |
|---|---:|
| **ADAM R. LONG,** | **Case No. 09-23473** |
| Debtor. | Chapter 7 |

**JAMES J. YODER,**
    **Plaintiff,**

    v.                                                            **Adv. No. 09-6172**

**ADAM R. LONG,**
    **Defendant.**

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Debtor moves for summary judgment.[1] Plaintiff James Yoder seeks to except $941,780.82 from discharge under 11 U.S.C. §523(a)(2)(A). Plaintiff claims Debtor obtained a loan with false representations regarding collateral for the loan.

---

[1] Doc. No. 70.

11.05.19 Yoder v Long SJ.wpd

## Findings of Fact

Debtor filed for bankruptcy on October 16, 2009. Debtor previously worked in the financial services industries. He worked as a home mortgage consultant before he began buying, renovating, and reselling residential properties.

On December 2, 2006, Plaintiff agreed to loan Debtor $200,000 for his home renovation business. Plaintiff has known Debtor since Debtor was a child. Debtor and Plaintiff's son were childhood friends. Plaintiff coached Debtor in middle school football.

On January 18, 2007, Plaintiff loaned Debtor an additional $250,000 to $270,000. Plaintiff charged Debtor a $15,000 interest payment for the original $200,000 loan, which was to be paid on February 1, 2007. Apparently, the parties rounded-up the indebtedness to an even $500,000 because on January 18, 2007, Debtor signed a promissory note for that principal sum. The note provided for 30% interest on the principal amount payable in two semi-annual installments of $75,000 on June 30, 2007, and December 31, 2007. The note provided the loan would be secured by a mortgage filed of record on the property located at 1000 W. 66th Terrace, Kansas City, Missouri. The property was one of many renovation projects Debtor was working on in early 2007. Debtor told Plaintiff both before and after execution of the note "there would be sufficient equity in this property; and even if there wasn't, there's plenty of equity in other properties" to secure the note. Plaintiff alleges Debtor led him to believe a deed of trust would be recorded immediately. Debtor counters he told Plaintiff the note could not be secured until the house was completed and all liens and encumbrances had been refinanced. Plaintiff alleges Debtor told him a deed of trust was recorded; however, a deed of trust was never recorded for Plaintiff's loan.

-2-

11.05.19 Yoder v Long SJ.wpd

Case 09-06172    Doc# 84-1    Filed 05/20/11    Page 2 of 6

At the time of Plaintiff's loan, the property was already encumbered by a couple of deeds of trust securing $1,089,195 in bank loans. An appraisal of the property valued it at $1.508 million as of September 7, 2006, but this appraisal included Debtor's planned, but not yet completed improvements. The county tax office assessed the property worth $657,500 for the 2007 tax year. In 2007, Debtor listed the property for sale for $1,595,000.

By June 2007, the project was in financial trouble. On June 12, 2007, Debtor obtained a $1.345 million loan from another bank to refinance the prior deeds of trust and to pay outstanding contractor bills and liens. The refinancing loan was secured by a deed of trust executed June 12, 2007.

In July 2007, Debtor requested another $500,000 from Plaintiff. Plaintiff then discovered his outstanding note was not secured, and a deed of trust had never been recorded. Based on the $1.345 million deed of trust already on file, Plaintiff determined there would not be enough equity to secure his initial loan even if he recorded a deed of trust immediately. Plaintiff demanded repayment. Debtor did not repay the loan. The real estate market declined rapidly in the ensuing months, and Debtor's business collapsed. The bank foreclosed on the property and purchased it in foreclosure on July 7, 2008, for $673,000. On December 5, 2008, the bank sold the property for $802,000.

## Conclusions of Law

### A. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates there is no genuine issue as to any material fact, and he is entitled to judgment as a matter of law.[2] All inferences are

---

[2] Fed. R. Bankr. P. 7056.

11.05.19 Yoder v Long SJ.wpd

to be construed in favor of the non-moving party.[3] Only when reasonable minds could not differ as to the import of the proffered evidence is summary judgment proper.[4] In determining whether any genuine issues of material fact exist, the court must construe the record liberally in favor of the party opposing the summary judgment.[5] An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."[6] The moving party has the burden of establishing that he or she is entitled to summary judgment.[7] This Court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor.[8] Essentially, this Court performs the threshold inquiry of determining whether a trial is necessary.[9]

Summary judgment generally is not favored when an element of the case is the defendant's alleged fraudulent intent.[10]

### B. 11 U.S.C. §523(a)(2)(A) and Justifiable Reliance

In order to establish a debt is nondischargeable under §523(a)(2)(A), the plaintiff must prove by the preponderance of the evidence: (a) the defendant made a false representation or an omission; (b) the defendant did so with an intent to deceive; (c) the plaintiff justifiably relied upon the defendant; and (d) as a result the defendant wrongfully induced the plaintiff to advance

---

[3] *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000).
[4] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51 (1986).
[5] *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) (citation omitted).
[6] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).
[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[8] *Anderson*, 477 U.S. at 249.
[9] *Id.* at 250.
[10] *In re Davison*, 296 B.R. 841, 847 (Bankr. D. Kan. 2003).

-4-
11.05.19 Yoder v Long SJ.wpd

Case 09-06172   Doc# 84-1   Filed 05/20/11   Page 4 of 6

money.[11]  In 1995, the United States Supreme Court held the creditor's reliance must be determined by the lesser justifiable reliance standard rather than by the higher reasonable reliance standard.  Therefore, Debtor's arguments based on pre-1995 case law apply a higher, now incorrect standard.  Justifiable reliance is subjective.  A subjective determination focuses on the qualities and characteristics of the particular plaintiff and the circumstances of the particular case rather than applying an objective, reasonable standard uniformly to all cases.[12]  The determination is fact-intensive and, like a debtor's fraudulent intent, is a difficult element to discern from summary judgment pleadings.

Genuine issues as to Debtor's intent to deceive and Plaintiff's justifiable reliance exist.  The transaction at issue was not a typical arm's-length transaction.  Plaintiff knew Debtor since he was 13 years old and regarded him enough to loan him a significant amount.  On the other hand, Plaintiff concedes he is an experienced businessman with far greater business acumen than Debtor.  The facts are widely controverted.  Since all inferences drawn from the facts must be construed in favor of the non-moving Plaintiff, Debtor fails to meet his burden to show he is entitled to judgment as a matter of law.

### C. Damages and the Cause of Loss

Plaintiff must prove Debtor's false representations caused him to part with his money.[13]  Debtor argues he should prevail as a matter of law because even if he falsely represented he would record a deed of trust, the real estate market downturn would have caused Plaintiff's loss,

---

[11] *Field v. Mans,* 516 U.S. 59, 69 (1995), which summarily defines the standard applied for false pretenses, false representations, and actual fraud as common law terms in that "they imply elements that the common law has defined them to include."

[12] *Id.* at 74-75.

[13] *In re Baillio,* 2010 WL 3782065, at *17-18 (Bankr. D.N.M.), *citing In re Young,* 91 F.3d 1367, 1373 (10th Cir. 1996) (creditor must prove the debtor's representation caused the creditor to sustain a loss).

-5-
11.05.19 Yoder v Long SJ.wpd

Case 09-06172    Doc# 84-1    Filed 05/20/11    Page 5 of 6

anyway. Debtor's argument incorrectly frames the legal question under §523(a)(2)(A). A plaintiff must show his justifiable reliance on the debtor's representations proximately caused the creation of the debt. Construing all factual inferences in Plaintiff's favor, the question in this case is whether an alleged representation about a recorded deed of trust induced Plaintiff to make a loan he would not have made but for the representation. Material facts are controverted regarding Debtor's alleged representations concerning security for the loan. Debtor can not prevail as a matter of law regarding the cause of Plaintiff's damages.

### D. Statute of Frauds

The statute of frauds does not apply. Plaintiff makes no claim to an interest in real property and does not seek to enforce an unwritten agreement. The complaint focuses solely on the possible *in personam* recovery of the debt post-discharge. Even if the statute could apply, reliance and partial performance negate its effect, and reliance is the subject of a factual dispute. The statute of frauds does not shield Debtor as a matter of law.

### Conclusion

IT IS THEREFORE ORDERED Defendant's Motion for Summary Judgment under 11 U.S.C. §523(a)(2)(A) is DENIED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS